FILED
March 08, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002469456

14

WENDY DEZZANI (115870)
Attorney at Law
263 Main Street, Level 2
Placerville, CA 95667
Telephone: (530) 295-6406
Fax No.: (530) 295-6408
Email: wdezzani@aol.com

Attorney for Trustee,
 Gary R. Farrar

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### (Modesto Division)

-oOo-

| | |
|---|---|
| In re | BK NO. 09-93218-E-7 |
| | DC No.: WSD-4 |
| **ISMAIL OSORIO GARCIA and VERONICA ELIA GARCIA,** | Date: April 7, 2010<br>Time: 10:00 a.m. |
| Debtors. / | Dept: E<br>Hon. Ronald H. Sargis |

**TRUSTEE'S MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY
OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS AND
INTERESTS, AND PAY BROKERS' COMMISSIONS ON SALE
(1713 Carousel Drive, Modesto, California - to R. Cibrian)
[Docket Control No. WSD-4]**

A. <u>Proposed Sale</u>.

Gary R. Farrar (the "Trustee"), Trustee of the Ismail Osorio Garcia and Veronica Elia Garcia Chapter 7 estate, hereby moves the Court pursuant to 11 USC section 363(b) and (f)(1),(2),(3),(4) and/or (5) for authorization to sell certain real property of the estate commonly known as 1713 Carousel Drive, Modesto, Stanislaus County, California, APN 046-016-004 (the

"Property"), for $245,000.00 to Ramon Cibrian or nominee ("Buyer"). The Buyer is to receive a credit of $5,000.00 towards the Buyer's closing costs, for an effective selling price of $240,000. The Property is comprised of an approximately 2,700 square foot single-family residence.

The terms and conditions of the sale are detailed in the Residential Purchase Agreement and Joint Escrow Instructions Dated February 9, 2010 (including Counteroffer No. 1 dated February 9, 2010) (the "Purchase Contract"), attached collectively as **Exhibit "1"** hereto. The Buyer has paid deposits totaling $3,000.00. The balance of the purchase price is to be paid within 10 days after approval of the sale by the Court. The Property is to be sold in an "AS IS" condition. The Buyer has waived the sale contingencies. Interested parties are advised to review the Purchase Contract for further details of the sale.

The sale is subject to overbids according to a procedure to be established by the Court at the time of the hearing on approval of the sale (discussed below).

The Trustee is requesting authorization to sell the Property free and clear of the following liens, claims and interests: (1) Bank of America's deed of trust of record against the Property, (2) GMAC's claim of a lien against or other interest in the Property based on an unrecorded deed of trust, and (3) the debtors' homestead exemption claim in the amount of $75,000.00.

The Trustee is the authorized representative of the Garcia Chapter 7 estate. 11 U.S.C. section 323(a). Accordingly, the Trustee requests that the Court expressly authorize the Trustee to execute any and all documents necessary to consummate the proposed sale, including, but not limited to, the deed conveying title to the Property on behalf of the Garcia Chapter 7 estate.

**B.     Payment of Real Estate Brokers' Commissions.**

This Court previously entered an order authorizing the Trustee to employ Bob Brazeal of PMZ Real Estate ("PMZ") as the real estate broker for the estate to market and sell the Property. PMZ represents the Trustee as the seller in the transaction. Patricia Acosta of Atlantic Realty represents the Buyer.

WSD\Farrar\Garcia\WSD-4.Sale.Mot        -2-

MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY
OF THE ESTATE FREE AND CLEAR OF LIENS AND INTERESTS,
AND PAY BROKERS' COMMISSIONS ON SALE

The listing agreement for the Property provided for a commission equal to 6% of the selling price, to be paid from the sale proceeds at the close of escrow. The Trustee believes that the proposed 6% commission is customary and reasonable for sales of residential real property in the Modesto area.

The Trustee requests final approval of and authorization to pay the agreed real estate commission of 6% of the effective selling price ($14,400.00) from the sale proceeds at the close of escrow; provided, however, that the Garcia Chapter 7 estate shall have no liability for payment of the commission from funds other than the sale proceeds. The commission is to be allocated as follows: 50% to PMZ ($7,200.00), and 50% to Atlantic Realty ($7,200.00).

C. **Sale at Fair Market Value.**

Upon the Trustee's request, PMZ listed the Property for sale in the Multiple Listing Service for the area and began actively marketing the Property shortly after the commencement of the case. The Trustee received two previous offers to purchase the Property; however, those parties did not increase the purchase deposit or waive the sale contingencies within the time provided in the sale agreement, and the sales were cancelled. The most recently cancelled sale was for an effective price of $242,500.00.

According to listing information obtained and provided to the Trustee by Mr. Brazeal, the property was previously listed for sale from August 26, 2008 through October 6, 2008 at $309,995, before the debtors filed their bankruptcy case. In addition, available listing information indicates that the debtors had a sale pending at $265,000 from October 15, 2008 through October 24, 2008, which was not completed.

Based upon the comparable sale information provided by Mr. Brazeal, the previous unsuccessful attempts by both the debtors and the Trustee to sell the Property at a higher price and declines in property values in the area in the past year, the Trustee believes that the proposed effective selling price of $240,000.00 represents the fair market value of the Property.

WSD\Farrar\Garcia\WSD-4.Sale.Mot -3-

MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY
OF THE ESTATE FREE AND CLEAR OF LIENS AND INTERESTS,
AND PAY BROKERS' COMMISSIONS ON SALE

Furthermore, the sale of the Property subject to overbids will insure that the Property is sold at fair market value.

**D.  Liens and Encumbrances Against the Property.**

**1. Preliminary Title Report**

Attached as **Exhibit "2"** hereto is a true and correct copy of a Preliminary Title Report for the Property by Chicago Title Company dated February 10, 2010 (the "Title Report") (standard form provisions not attached). The Property is more particularly described in Exhibit "A" to **Exhibit "2."**

**2. Property Taxes**

Other than the disputed liens and claims discussed below, the only monetary liens against the Property are liens for property taxes, assessments, district fees, and the like, and any penalties and interest thereon (Item Nos. 1, 2, 3 and 4 of the Title Report). The accrued portion of Item Nos. 1, 2, 3 and 4 (property taxes estimated at $1,548) shall be prorated and paid as of the close of escrow. Following the sale, the Property is to remain subject to the unaccrued portion of the liens shown as Item Nos. 1, 2, 3 and 4.

**3. Easements, Rights, Covenants, Conditions and Restrictions**

The Property is also subject to private road and public utility easements; rights of ingress and egress; covenants, conditions and restrictions (Item Nos. 5 through 6, and 10 through 11 of the Title Report). The Property will remain subject to the easements, rights, reservations, covenants, conditions and restrictions shown in the Title Report as Item Nos. 5 through 6 and 10 through 11 of the Items and Exceptions to Coverage, following the sale.

**4. Liens and Interests that are Subject to Dispute; Background of Disputes**

The Title Report identifies a first priority Deed of Trust in favor of Bank of America, given by the debtors to secure a promissory note in the original principal amount of $79,300.00, dated September 26, 2006 and recorded in the official records of Stanislaus County, California on

WSD\Farrar\Garcia\WSD-4.Sale.Mot                -4-

MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY
OF THE ESTATE FREE AND CLEAR OF LIENS AND INTERESTS,
AND PAY BROKERS' COMMISSIONS ON SALE

October 27, 2006 as Instrument No. 159554; a related Notice of Default recorded February 27, 2009 as Instrument No. 19227; a Substitution of Trustee recorded June 1, 2009 as Instrument No. 54185; and a Notice of Trustee's Sale recorded June 1, 2009 as Instrument No. 54186 (Item No. 7 of the Title Report).

The Title Report also identifies two Notices of Action Pending recorded by GMAC Mortgage Corporation ("GMAC") on September 2, 2009 as Instrument No. 86595, and on September 23, 2009 as Instrument No. 92798, with respect to the Property (Item Nos. 8 and 9 of the Title Report). The Notices of Pending Action were recorded in connection with a Complaint to Establish Deed of Trust or, in the Alternative, to Establish Equitable Lien or Mortgage pursuant to Doctrine of Equitable Subrogation; Declaratory Relief (the "Complaint"), filed by GMAC against the Debtors in the Stanislaus County Superior Court on August 24, 2009, commencing Case No. 644-862 (the "State Court Action"), which is discussed below. *See* Request for Judicial Notice filed concurrently with this motion.

GMAC does not have any deed of trust of record against the Property. GMAC contends that the debtors borrowed $510,000.00 from its predecessor-in-interest, GreenPoint Mortgage Funding, Inc. ("GreenPoint"), which was used in part to pay off an obligation of the debtors to World Savings that was secured by the Property, and executed and delivered a promissory note in the amount of $510,000.00 and a deed of trust against the Property to GreenPoint in February of 2006. However, GreenPoint did not record a deed of trust against the Property at the time of making the loan. GMAC alleges that it later received an assignment of GreenPoint's rights under the promissory note and alleged deed of trust.

After receiving the loan from GreenPoint, the Debtors obtained a loan of $79,300.00 from Bank of America in or about September of 2006 and conveyed a deed of trust against the Property to Bank of America, identified above, which Bank of America recorded on October 27, 2006. At some point, GMAC discovered that the deed of trust allegedly received by GreenPoint to secure its loan to the debtors had not been recorded. GMAC then filed the Complaint.

WSD\Farrar\Garcia\WSD-4.Sale.Mot                -5-

MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY
OF THE ESTATE FREE AND CLEAR OF LIENS AND INTERESTS,
AND PAY BROKERS' COMMISSIONS ON SALE

In the Complaint, GMAC Mortgage seeks, among other things, a judgment which "reforms the public record and shows" the unrecorded deed of trust "recorded in the Office of the County Recorder of Stanislaus County as of February 28, 2006 as the first lien and encumbrance against the Property which is superior to all liens and encumbrances against the Property including" Bank of America's deed of trust. GMAC did not file a proof of claim in this case, and the Trustee has not been provided with a copy of any deed of trust against the Property executed by the debtors in favor of GMAC's predecessor, GreenPoint.

In addition to the liens and interests asserted by Bank of America and GMAC, the debtors, Ismail and Veronica Garcia, have claimed a homestead exemption in the amount of $75,000.00 for the Property. The debtors' homestead exemption would be limited to the equity in the Property after first deducting the amount(s) of the voluntary liens and property tax liens against the Property. The Trustee anticipates that GMAC may dispute the debtors' homestead exemption claim on grounds that would not be applicable to the Trustee, since the debtors, according to GMAC's allegations, had actual knowledge that they had conveyed a deed of trust against the Property to GMAC's predecessor to secure repayment of a $510,000 loan. GMAC consequently may contend that the debtors are unable to avoid GMAC's alleged lien. In addition, if any lien of GMAC can be avoided by the Trustee (discussed below), the lien would be preserved for the benefit of the Chapter 7 estate under 11 USC section 551.

E. **Sale Free and Clear of Liens, Claims and Other Interests.**

1. **Sale Free and Clear of Bank of America's Deed of Trust**

GMAC expressly disputes the priority of the recorded deed of trust of Bank of America, asserting in the Complaint that Bank of America had actual or constructive knowledge of GMAC's unrecorded deed of trust, and seeking "reformation of the public record," such that GMAC would have a lien that is superior to Bank of America's deed of trust. Therefore, Bank of America's lien is subject to a bona fide dispute. If GMAC ultimately prevails on the claims asserted in the Complaint and is determined to have a superior lien, Bank of America's lien

WSD\Farrar\Garcia\WSD-4.Sale.Mot            -6-

MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY
OF THE ESTATE FREE AND CLEAR OF LIENS AND INTERESTS,
AND PAY BROKERS' COMMISSIONS ON SALE

would be entirely unsecured by the value of the Property and could be avoided under 11 USC section 506. If the Trustee is compelled to satisfy Bank of America's deed of trust at the close of escrow, the Trustee would be at risk of having to pay the amount of Bank of America's lien twice.

For these reasons, Bank of America's lien is in bona fide dispute. The Property consequently can be sold free and clear of Bank of America's lien pursuant to 11 USC section 363(f)(4).

In addition, the Property may be sold free and clear of Bank of America's deed of trust pursuant to 11 USC section 363(f)(3) because the Property is being sold at a price that is greater than the aggregate value of all liens of record against the Property. The Property also may be sold free and clear of Bank of America's deed of trust pursuant to 11 USC section 363(f)(5) because Bank of America could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest, and the sale proceeds will be sufficient to satisfy Bank of America's claim in full in the event Bank of America is determined to have the superior lien against the Property. On the other hand, if Bank of America's lien is junior to GMAC's lien, Bank of America's lien could be avoided under 11 USC section 506, since Bank of America's claim would in that case be entirely unsecured by the value of the Property.

Finally, the Trustee intends to seek the consent of Bank of America to the sale of the Property free and clear of Bank of America's deed of trust on the conditions set forth in subsection 4 below. In the event Bank of America consents to the sale, the Property can alternatively be sold free and clear of Bank of America's deed of trust under 11 USC section 363(f)(2).

2.  **Sale Free and Clear of GMAC's Claim of a Lien or Other Interest**

The Complaint was filed on August 24, 2009, and the above Notices of Pending Action were recorded in September of 2009, by GMAC, all within the 90-day period prior to the filing of the debtors' bankruptcy petition, which was filed on October 2, 2009 (the "Petition Date").

WSD\Farrar\Garcia\WSD-4.Sale.Mot    -7-

MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY
OF THE ESTATE FREE AND CLEAR OF LIENS AND INTERESTS,
AND PAY BROKERS' COMMISSIONS ON SALE

The Trustee contends that GMAC did not have a perfected lien against the Property on the Petition Date, and GMAC's deed of trust may be avoided by the Trustee pursuant to 11 USC section 544(a).

Furthermore, to the extent that GMAC could potentially obtain perfection of its lien through the State Court Action and the recording of the Notices of Pending Action, any lien resulting from the recording of the Notices of Pending Action within the 90-day period prior to the Petition Date is avoidable pursuant to 11 USC section 547 as a preferential transfer.

First, any transfer of an interest in the Property resulting from the recording of the Notices of Pending Action was made for the benefit of a creditor, GMAC, and was on account of an antecedent debt; namely, the loan made by GMAC's predecessor, GreenPoint, to the debtors in February of 2006. Second, for purposes of section 547, any transfer of an interest in the Property was made, at the earliest, when GMAC recorded the Notices of Pending Action, which was within 90 days of the Petition Date. See 11 USC section 547(e). Third, any transfer was made at a time when the debtors: (a) are presumed, pursuant to 11 USC section 547(f), to have been insolvent, and (b) were actually insolvent, as evidenced by their bankruptcy schedules filed in this case. Fourth, any transfer occurred, at the earliest, within 90 days of the Petition Date. Finally, the transfer would enable GMAC to receive more than it would receive in this Chapter 7 case if the transfer had not been made and GMAC received a distribution as a general unsecured creditor, as evidenced by the debtors' bankruptcy schedules and Bank of America's recorded deed of trust.

For these reasons, any lien or other interest claimed by GMAC is subject to a bona fide dispute. The Property consequently may be sold free and clear of any lien or interest of GMAC pursuant to 11 USC section 363(f)(4).

The Property also may be sold free and clear of any lien or interest of GMAC pursuant to 11 USC section 363(f)(1). Applicable nonbankruptcy law permits the sale of real property free and clear of an unrecorded deed of trust. Any transfer of an interest in the Property resulting

WSD\Farrar\Garcia\WSD-4.Sale.Mot     -8-

MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY
OF THE ESTATE FREE AND CLEAR OF LIENS AND INTERESTS,
AND PAY BROKERS' COMMISSIONS ON SALE

from a recording within 90 days of the Petition Date would be avoidable under 11 USC section 547. In addition, the Property may be sold free and clear of GMAC's claim pursuant to 11 USC section 363(f)(3) because the Property is being sold at a price that is greater than the aggregate value of all liens of record against the Property. The Property also may be sold free and clear of GMAC's claim pursuant to 11 USC section 363(f)(5) because GMAC could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its claim, which is not secured by a perfected interest in the Property.

Finally, the Trustee understands that GMAC will likely consent to the sale of the Property free and clear of GMAC's alleged lien or other interest on the conditions set forth in subsection 4 below, or similar terms. In the event GMAC consents to the sale, the Property also can be sold free and clear of GMAC's lien or interest under 11 USC section 363(f)(2).

### 3. Sale Free and Clear of the Debtors' Claim of a Homestead Exemption

The Trustee believes the debtors' claim of a homestead exemption for the Property is subject to a bona fide dispute. The Complaint clearly states GMAC's contention that the debtors knowingly and intentionally conveyed a deed of trust to GMAC's predecessor, GreenPoint, to secure the repayment of a $510,000 loan made to them. If so, the debtors, unlike the Trustee and creditors of the debtors who were unaware of the unrecorded deed of trust, had actual knowledge of the existence of the deed of trust, despite the fact that it was not recorded. In addition, if GMAC were to prevail on the claims alleged in the Complaint and obtain a lien against the Property, the debtors would have no equity in the Property.

It therefore seems clear that GMAC disputes the debtors' homestead exemption claim for the Property. In addition, if GMAC's lien can be avoided by the Trustee, the lien would be preserved for the benefit of the Chapter 7 estate, rather than the debtors. For these reasons, the debtors' exemption claim is in bona fide dispute.

///

WSD\Farrar\Garcia\WSD-4.Sale.Mot            -9-

MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY
OF THE ESTATE FREE AND CLEAR OF LIENS AND INTERESTS,
AND PAY BROKERS' COMMISSIONS ON SALE

The Property consequently can be sold free and clear of the debtors' interest that is based on their claim of a homestead exemption for the Property pursuant to 11 USC section 363(f)(4). The Property also may be sold free and clear of the debtors' exemption claim pursuant to 11 USC section 363(f)(5) because the debtors could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of their homestead exemption. If GMAC's lien cannot be avoided by the Trustee, there would be no equity in the Property to which the debtors' exemption claim would attach, and the debtors' exemption claim would have no value. On the other hand, if GMAC's lien is avoided by the Trustee, the net sale proceeds recovered by the Trustee after payment of Bank of America's secured claim would exceed the amount of the debtors' homestead exemption claim.

Finally, the Trustee understands that the debtors will consent to the sale of the Property free and clear of their homestead exemption claim, on the conditions set forth in subsection 4 below. Provided that the debtors consent to the sale, the Property can be sold free and clear of the debtors' homestead exemption under 11 USC section 363(f)(2).

### 4. Proposed Terms and Conditions for Sale Free and Clear of Liens, Claims and Interests Claimed by Bank of America, GMAC and the Debtors

Any lien, claim of a homestead exemption or other interest of Bank of America, GMAC and the debtors shall transfer and attach to the net sale proceeds (after $5,000 credit to the Buyer and payment of accrued real property taxes, district fees and the like; escrow, title and other closing costs, as specified in the Purchase Contract; and approved real estate commissions on the sale) to the same extent, and with the same validity and priority, as exists against the Property. The Trustee shall deposit the disputed sale proceeds into a segregated and blocked account, pending entry of an order or judgment of the Bankruptcy Court, or a stipulation, release, payoff demand, or other agreement with Bank of America, GMAC or any successor in interest, and the debtors, resolving their disputes as to entitlement to the proceeds, and providing for the disposition of the proceeds.

F.  **Disposition of Proceeds**.

The sale proceeds (after credit of $5,000.00 towards the Buyer's closing costs) shall be distributed as follows:

1. First, in payment of the real property taxes, general and special assessments, district fees, and the like, and any penalties and interest thereon, secured by the Property (Item Nos. 1, 2, 3 and 4 of the Title Report), prorated as of the close of escrow.

2. Second, in payment of customary and reasonable escrow, title, sale, and closing costs, allocated as set forth in the Purchase Contract.

3. Third, in payment of the approved real estate brokers' commissions on the sale (50% to PMZ and 50% to Atlantic Realty).

4. Fourth, the balance of the sale proceeds is to be paid directly to the Trustee, and shall be deposited by the Trustee into a segregated, blocked trust account for the Garcia Chapter 7 estate, pending a further order or judgment of the Bankruptcy Court, or a stipulation, release, payoff demand, or other agreement with Bank of America, GMAC or any successor in interest, and the debtors, resolving any disputes regarding entitlement to the proceeds and providing for the disposition of the proceeds. Any lien, homestead exemption or other interest claimed by Bank of America, GMAC or the debtors shall transfer and attach to the disputed sale proceeds to the same extent, and with the same validity and priority, as exists against the Property.

The amount of net sale proceeds, after $5,000 credit to the Buyer, and before payment of any liens other than property taxes, is estimated at $221,000.

G.  **Tax Consequences of Sale**.

The estate is not expected to incur any state or federal tax liability as a result of the sale. The Trustee is informed and believes that the debtors purchased the Property for a price substantially in excess of the proposed selling price, so that there will not be a taxable gain on

MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY
OF THE ESTATE FREE AND CLEAR OF LIENS AND INTERESTS,
AND PAY BROKERS' COMMISSIONS ON SALE

the sale. Furthermore, the Trustee is informed and believes that the Property has been the debtors' primary residence since about 2001. Therefore, the Property would qualify for a residence exclusion from capital gains taxes.

H.      **Overbid Procedure**.

The proposed sale shall be subject to overbids. The Trustee will recommend at the time of the hearing that the Court approve the following overbid procedure:

1. All overbids shall be on substantially the same terms and conditions as the pending sale; provided, however, that the only conditions of the sale for the benefit of the purchaser shall be Bankruptcy Court approval of the sale and the Trustee's ability to deliver clear title.

2. The first initial overbid shall be in the minimum amount of $255,000.00 (with the purchaser to receive a credit of up to $5,000.00 toward the purchaser's closing costs) ($10,000.00 over Buyer's pending offer).

3. Subsequent overbids shall be in minimum increments of $2,000.00.

4. Any person wishing to overbid shall provide to the Trustee a cashier's check in the minimum amount of $13,000.00, either prior to the hearing on approval of the sale or at the time the bidder makes the first overbid. If Mr. Cibrian wishes to make an overbid, he shall be required to provide an additional deposit of $10,000.00 in the form of a cashier's check prior to making the first overbid.

5. The successful bidder shall be required to pay the balance of the purchase price in immediately available funds or in the form of a cashier's check within 10 calendar days after the hearing at which the sale is approved, or such later date as Trustee and the approved purchaser may mutually agree.

6. In the event that, through no fault of the Trustee, the approved purchaser fails to pay the balance of the purchase price within 10 calendar days following approval

MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY
OF THE ESTATE FREE AND CLEAR OF LIENS AND INTERESTS,
AND PAY BROKERS' COMMISSIONS ON SALE

of the sale, or such later date as Trustee and the approved purchaser may mutually agree, the entire deposit shall be forfeited to the Trustee.

7. The cashier's checks of all unsuccessful bidders shall be returned immediately following the hearing.

8. A back-up bid may be approved, and the Property may be sold to the back-up bidder, at the option of the bidder, if the successful purchaser fails to pay the balance of the purchase price within 10 days after approval of the sale or to close escrow within the time limitations provided in the Purchase Contract, without necessity of a further court order.

I. **Conclusion**.

WHEREFORE, Gary R. Farrar, Trustee of the Ismail Osorio Garcia and Veronica Elia Garcia Chapter 7 estate, respectfully asks the Court to approve the proposed sale of the Property to Buyer on the terms and conditions set forth above; to authorize the sale of the Property free and clear of the liens, homestead exemption claims and interests of Bank of America, GMAC, and the debtors, which are subject to a bona fide dispute, on the terms and conditions provided above; to approve payment of the proposed real estate brokers' commissions upon the sale; and to grant such other and further relief as the Court deems proper.

**WENDY DEZZANI, Attorney at Law**

Dated: March 8, 2010

*/s/ Wendy Dezzani*
WENDY DEZZANI,
Attorney for Gary R. Farrar,
Trustee of the Ismail and Veronica
Garcia Chapter 7 Estate

WSD\Farrar\Garcia\WSD-4.Sale.Mot     -13-

MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY
OF THE ESTATE FREE AND CLEAR OF LIENS AND INTERESTS,
AND PAY BROKERS' COMMISSIONS ON SALE

## VERIFICATION

I, Gary R. Farrar, am the Trustee in the above Chapter 7 case. I have read the Motion for Authorization to Sell Real Property of the Estate Free and Clear of Liens and Interests, and to Pay Brokers' Commissions on Sale (DC No. WSD-4) and know the contents thereof. I certify that the facts stated therein are true of my own knowledge, except as to the matters which are therein stated upon information or belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 8th day of March, 2010, at Modesto, California.

_____
GARY R. FARRAR

WSD\Farrar\Garcia\WSD-4.Sale.Mot     -14-

MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY
OF THE ESTATE FREE AND CLEAR OF LIENS AND INTERESTS,
AND PAY BROKERS' COMMISSIONS ON SALE